

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable O. J. S. Ellingson
General Manager
Texas Prison System
Huntsville, Texas

Dear Sir:

Opinion No. 0-3927
Re: Can the Texas Prison System
legally manufacture license
plates for Mexico?

We have for consideration your letter of September 3, 1941, requesting our opinion on the above question.

Insofar as the State of Texas is concerned, we believe that your question is answered by our opinion No. 0-1916, addressed to you, holding that the Texas Prison System has a right to make chairs for the American Red Cross. It should be noted here that said opinion No. 0-1916, as it applies within the State of Texas to sales to others than State agencies and institutions and institutions and agencies of political subdivisions of the State, has been superseded by Acts 1941, 47th Legislature, House Bill No. 323, which is now codified as Article 11371-1 of the Penal Code. But we believe that under the Texas law the Prison System is permitted to sell its manufactured articles outside the State of Texas as the Prison Board may see fit.

Federal control is exercised over the interstate transportation of prison manufactures under the provisions of Section 61 of Title 49, United States Code Annotated, which provides as follows:

"It shall be unlawful for any person knowingly to transport or cause to be transported, in any manner or by any means whatsoever, or aid or assist in obtaining transportation for or in transporting any goods, wares, and merchandise manufactured, produced, or mined wholly or in part by convicts or prisoners (except convicts or prisoners on parole

or probation), or in any penal or reformatory institution, from one State, Territory, Puerto Rico, Virgin Islands, or District of the United States, or place noncontiguous but subject to the jurisdiction thereof, or from any foreign country, into any State, Territory, Puerto Rico, Virgin Islands, or District of the United States, or place noncontiguous but subject to the jurisdiction thereof, where said goods, wares, and merchandise are intended by any person interested therein to be received, possessed, sold, or in any manner used, either in the original package or otherwise in violation of any law of such State, Territory, Puerto Rico, Virgin Islands, or District of the United States, or place noncontiguous but subject to the jurisdiction thereof. Nothing herein shall apply to commodities manufactured in Federal penal and correctional institutions for use by the Federal Government."

Although this statute prohibits the shipment into the United States of prison made goods <u>from</u> any foreign country, yet we find no provision of the Federal law prohibiting such shipment from the United States or any State into a foreign country.

It is therefore our opinion that the Texas Prison System, acting under the direction and within the discretion of the Prison Board, can legally manufacture license plates for Mexico, and sell them in Mexico, unless prohibited therefrom by provisions of the Mexican law.

In this connection, we think it proper to call your attention to the provisions of Section 62 of Title 49, U.S.C.A., which are as follows:

"All packages containing any goods, wares, and merchandise manufactured, produced, or mined wholly or in part by convicts or prisoners, except convicts or prisoners on parole or probation, or in any penal or reformatory institution, when shipped or transported in interstate or foreign commerce shall be plainly and clearly marked, so that the name and address of the shipper, the name and address of the consignee, the nature of the

contents, and the name and location of the penal
or reformatory institution where produced wholly
or in part may be readily ascertained on an in-
spection of the outside of such package."

You will note that our opinion is that the sale of
prison made license plates to Mexican authorities does not
violate the Texas law if the sale is made in Mexico, and not
in Texas. The same rule applies to the offer to sell the
plates. (See Article 11371-1 of the Penal Code.) Inasmuch
as the transaction contemplated involves an executory contract
of sale and an execution of that contract, we think it proper
to quote authorities on the question of the situs of such trans-
actions:

11 American Jurisprudence 394, Sees. 111, 112:

"Executory Contract.--Considerable difficulty
arises at times in determining the time and place
at which an executory contract of sale was entered
into and the resultant law to be applied. This is
particularly so in the case of contracts made by
correspondence or through the intervention of an
agent. The general rule in all such cases is that
a contract of sale is considered as made in that
place in which the final act necessary to make the
contract binding on both parties is to be performed,
and ordinarily the law of that place will be the
proper law of the contract. In general, when a
definite proposition to buy or to sell is sent
through the mail from one state or country to
another, the executory contract is completed as
soon as a definite and unconditional acceptance
of the proposition is deposited in the mail in
the latter state or country; and the executory
contract is therefore deemed to have been made
in that state.

"By Agent.--In the case of a salesman negotiat-
ing contracts in one state on behalf of a principal
in another state, the question depends on the author-
ity of the agent and the nature of the transaction.
If the agent merely solicits and receives orders
subject to the approval of the principal, the con-
tract is not complete until this approval is given,

and the law of the place where it is given
is therefore the proper law of the contract.
This is the usual case, and the law of the
domicil of the principal is generally held
to govern where there is no evidence as to
the extent of the agent's authority.  On the
other hand, if the agent has authority to make
a binding contract of sale and undertakes to
do so, it is clear that the place of the execu-
tory contract is the place where he exercises
such authority, notwithstanding the vendor
does business in another state and the stock
from which the contract is to be filled is
in that state.  If the agent exceeds his au-
thority in undertaking to make a binding contract
of sale and there is a ratification of the con-
tract by the principal in another state, this
relates back to the time of the making of the
contract by the agent, and therefore makes the
state in which the agent acted the locus con-
tractus of the executory contract."

### 17 Corpus Juris Secundum 813-815:

"The place where a contract was made is to
be determined in accordance with the intention of
the parties.  As a rule, a contract is considered
as entered into at the place where the offer is
accepted, or where the last act necessary to a
meeting of the minds or to complete the contract
is performed.  So, where delivery of the instrument,
evidencing the contract is regarded as essential
to the completion of the contract, it is regarded
as made at the place of delivery.  * * *.

"As affected by mode of communication.  Where
an offer is accepted by letter or telegraph the
contract is completed at the place, it is general-
ly held, at which the letter or telegram is sent;
but, in circumstances where acceptance by tele-
graph requires delivery of the telegram to the
offeror, the contract is completed at the place
where such delivery is made.  Where a contract is
made by telephone, it is regarded as made at the
place from which the accepting party speaks.

"Contract by agent. A contract by an agent having authority to bind his principal is deemed to be made at the place where the agent enters into the agreement, even though his principal afterward approves it, but a contract by an agent which requires ratification by his principal is generally considered as made at the place where the ratification is given. Where negotiations for a contract are carried on between parties living in different states, partly by the interchange of letters and partly by oral communications through an agent, the contract is regarded as made in the state or place where it first takes effect, so as to become a binding obligation on both parties."

### 9 Texas Jurisprudence 364:

"Contract Partly to be Performed in Another State.--Where a contract is made in one state to be performed partly in that state and partly in another, the Texas courts may treat it as the contract of the place where made, and apply that law in determining its meaning and effect. * * *."

### 11 American Jurisprudence 395, Sec. 113:

"Executed Sales.--The determination of the time and place at which an executory contract becomes executed is frequently of the greatest importance. In many cases, as in transactions involving the sale of liquor, there may be statutes in one jurisdiction restricting the rights of the parties or even rendering the entire transaction void if the sale is consummated therein, whereas in another jurisdiction no such statutes exist. Delivery of the property is generally, though not necessarily, the act by which an executory contract becomes an executed contract. Therefore, in such case, the place of delivery is generally the place where the executed contract is deemed to have been made.

"Where there is no provision in a contract as to the place of delivery and the property, pursuant

to an express or implied understanding of the
parties, is delivered by the seller to a common
carrier in one state to be transported to another
and there turned over to the buyer, the weight
of authority holds that the former rather than
the latter state is to be regarded as the place
where the executed contract is made. Of course,
if the terms of a contract or the circumstances
of a transaction are such as to show that the
parties did not intend the title to pass until
actual delivery to the purchaser by the carrier
or until the performance of some other act, an
executed contract reaches its consummation in
the state in which that act is done, and not in
the state in which the property is delivered to
the carrier."

In view of these authorities, we suggest that, in
order to avoid a violation of Article 11371-1, the bid for the
manufacture of these plates should be delivered to the Mexican
authorities or their agent at some place in Mexico (whether
such bid is delivered by mail, telegraph, or an agent of the
Texas Prison System); that acceptance should occur in Mexico;
and that the contract should call for delivery in Mexico before
title passes.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

W. R. Allen
Assistant

WRA:RŘ

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN